Good morning, Your Honor. Good to see you all again this morning. Riley. I see you have a different suit on today. I have a different suit. The laundry is successful. By the record, my name is Mike Riley. I'm representing the defendant Jennifer Lindwall and Linda Dougherty. With me is co-counsel Nancy Anderson. I'm going to focus my comments today specifically as to the Sobolos and Freetag issues because we believe the court could be reversed here, should be reversed here on the issue of qualified immunity. And the issue comes down to whether the comments, the speech that is raised here is protected speech. And so we begin with the Sobolos analysis that basically says the controlling factor, the per se test is are the statements made pursuant to their duties. Yeah, but that's not – we don't have any factual development in the record on that. That wasn't – this is a development in the law that came up post. Why do we have jurisdiction to look at this in any event? Well, Your Honor – I mean, these are the material issues of fact, and it seems to me that the precious little here that we can look at is a pure abstract question of law. With all due respect, Your Honor, if you look at page 630 of this record, you have the issue blocked out on what the duties were of these individuals, what they claimed their duties were. And we did argue this below. This was part of our argument that this wasn't protected speech. And in specific, what they said their duties were at 630 is this. The role and responsibility of the plaintiffs is to, quote, develop, update, and maintain the KCDOT travel model, establish quality control measures to enhance model accountability and credibility, and to address issues related to travel model applications, including the concurrency program. So that's what their duties were. And so when you look at this whole case, this whole case has been an internal complaint. At page 5 of this record, they say in their complaint, we've gone through all these internal complaints, and now we're going to file this lawsuit because we've been retaliated. Well, what about the complaint to the ombudsman? What is that? Okay, fair question. I know what an ombudsman is, and it puts it in my question. Is that tantamount to writing a letter to your state senator or to the King County executive complaining about what's going on in county government? No, the King County Code specifically says at 3.42.010 that employees can complain to the ombudsman. My response is it's part of the internal open-door mechanism for complaints. And I think the court is focused on the next issue, which is what were the complaints here? Well, they did complain to the union, but Freetag says take a look at the collective bargaining agreement. If that's part of that process, that's okay, and that's at 168 of the record. We do have the collective bargaining agreement, or it's 161 rather. Then they complain to the Office of Civil Rights, and here's where King County Code 12.18 kicks in. And 12.18.020G says employees of King County can complain about the employment situation to the Office of Civil Rights. Again, this is not like Freetag where she was complaining to Senator Polanco. This is a specific internal process that's been created, designated for employees to complain. Then the court raised the ombudsman issue, and I think there is one- So how is that like Ceballos? I'm sorry? Why is that controlled by Ceballos? That's not part of their duties. Well, I- That just gives them a remedy to pursue. Well, for example, in the Freetag case- In Ceballos, he was a deputy DA. He was to report to his supervisors, and he took it upon himself to go outside and contradict office policy and testify against a motion to suppress. Well, Judge Reinhart found that that was in the Freetag case. I was on the panel. Then you know the case much better than I. Well, I don't know if I know it better, but I'm trying to understand. I know what the Supreme Court did with it, and it rejected the notion that if someone's duty is to make these reports, then they are still within the confines of their job. But you're saying now in the context of this structure here, if an employee has a complaint about the way things are being run, they can go to the ombudsman and have an appeal. Right. And they get retaliated against for that. You're suggesting Ceballos doesn't- so it says too bad? Yes. I think the case is, and if you looked at the Ceballos duties that he had, his part was quality control of that affidavit. Their job here, their testimony is their job was quality control. How do you do that? Well, you raise it internally to your supervisors, you raise it with the ombudsman, but you have those abilities to do it, and you should be able to do it. So, Mr. Raleigh, I'm looking at Ceballos, and specifically I'm looking at Justice Kennedy's opinion at, it looks like page 1961, and in that case he wrote, a public employer that wishes to encourage its employees to voice concerns privately retains the option of instituting internal policies and procedures that are receptive to employee criticism. Would you say that's what the ombudsman says here? Correct. Correct, Your Honor. It's not only the ombudsman. It was the collective bargaining agreement process. It was the human resource progress, and certainly this record would beg to say that they felt invited to complain because they had six complaints of all these investigations that took place. Certainly they were complaining, but at record of five, they even admit it was internal complaining here. So I do think that's pertinent. I do want to address one issue that I think is a fair issue here and that the appellees have raised, that if you look at page 488 of the record, there's a citizen's complaint out there, and there's a form that says citizen's complaint, and they fill that out, and then they attach to it the exact copy of what they submitted to the ombudsman. But if you look at the record at 488, the citizen's complaint is to the ombudsman, and this is why I wanted to stress the Freetag case because in the Freetag case, the court was concerned with whether, and it was at 546 of Freetag, whether the individual was expected to air the complaints to that particular individual. So in this case, we have the King County Code that is indicating to these individuals they should raise it to the ombudsman, and the citizen complaint form is specifically designated at 488. It will be going to the ombudsman. But the ombudsman does more than just handle internal employee grievances, does he not? Isn't the purpose of the ombudsman under the county code also to encourage employees who have a grievance about some action by a county official to give that public citizen a place to go with the complaint? I think so. So they're not calling a King County executive or a King County council member every time they have a complaint about the road department. Yeah, and I think that's a fair reading of it. I think in this case, though, if the Freetag opinion stands as his words are, that who is the person to whom that person should air their complaints, they were specifically airing their complaints, again, to the ombudsman, which was part of the process. And the record shows that after the ombudsman received this complaint, it was referred internally back to the roads department. An expert was retained outside to review the modeling that was taking place, and then a decision was made. Let me ask you this. I think it's Pickering that talked about the public school teacher. Yeah, the media case. And the court there said that if the teacher had appeared at a board of education meeting in the teacher's capacity as a private citizen complaining about whatever the issue was relating to the funding of the school, that that would be kind of classic First Amendment-protected speech. How is that different from a county employee who, in his capacity as a private citizen, goes home at night and says, I think that this particular unit within the Department of Transportation is too close to the developers and is not doing a good job of carrying out its duties? And as a private citizen, I have a concern about the modeling and the way that it's being applied to this development. Would that be protected First Amendment speech under Sobolos? Well, under Sobolos, I don't think the speech that you're articulating there is protected because, again, it was within the scope of their duties to be quality control. That was the teacher. But I'm trying to draw the distinction. I'm trying to figure out what difference it makes if the teacher thinks as a private person, without regard to his position as a teacher, that the schools are not being adequately supported and wants to make that complaint known to elected officials. There has to be some complement of petitioning the government for redress of grievances that's protected by the First Amendment. And the fact that the person is a teacher is sort of beside the point, if we can conclude that he's not wearing his or her teacher hat when they stand up at the Board of Education. All I can say is, and I think it's a fair question, don't have a perfect answer. My best response would be the teacher's job was not specifically quality control, like these people said. So if she's getting up as an individual citizen, that's one thing. But when your job is to do quality control on the educational system, like an internal school auditor, I think that would be a different case. And that's my time. I'd hope for one more minute at the rebuttal, and that would be it. I'll give you a minute for rebuttal. May it please the Court. I'm Mickey Gendler. I'm representing the appellees. I would encourage you to hear the Court initially ask whether the Court has jurisdiction over this appeal as a whole, because the briefing is a very fact-intensive briefing, and that even continues with the supplemental briefing and Your Honor's observation that we don't even have a factual record on that. The factual record we do have shows that at best it's a fact dispute, and one thing that hasn't come out is how the Freytag Court handled that. Even from a final verdict, the Court sent the case back and said, even with admittedly improper factors considered, we're not going to determine that this verdict has to be thrown out. Here, this case can go back, and there's ample opportunity for the trial judge to instruct a jury, if the judge were to use the same format of using examples in a jury instruction as the Freytag trial court had. Well, both courts suffer from the fact that Sobolos came down after the judges ruled. In one case, it was a jury verdict after a civil trial. In this case, it's a summary judgment motion. And as well, though, as this court suffered from that as well, the trial court did. So we have that. That's what I'm saying. I mean, in that respect, your argument is the situation is identical in that neither court, had the benefit of the Supreme Court's guidance in Sobolos. But here we go a step further because there's ample opportunity to straighten it out, and it's clear that it's all factual dispute. Counsel says, however, that the duties are agreed upon here, and that they include quality control, and that that's established by the record. Well, his side disputes that. And in our supplemental brief, we quoted their framing of it as, my clients meddling with other people's jobs. But what Freytag shows is that even if it was initially their job, and as Judge Tolman pointed out, they don't lose their rights entirely depending on the form they choose. Freytag started out initially, internally, just as the plaintiffs here did, seeking to correct the wrong through memos that were part of our job. Here it was internal, but we wouldn't concede that they were part of the job. They're the ones characterizing that as meddling from the beginning. So they're the ones disputing the characterization they now want to take. If Your Honors went back with the benefit of the hindsight and read the parties' briefs, Your Honors would see that our side's been consistent in identifying the speech as citizens, and their side, after reading the Ceballos case, suddenly does a whole 180 to say, how can we reshape our own view of this case to fit it within this new opinion? You would concede, would you not, Mr. Gendler, that under Ceballos, if we remand to Judge Peckman, you're going to lose some of the portions of your claim because of the fact that there were clearly statements that were made in part as a result of the position that your clients occupied, commenting upon matters at work, just like the assistant district attorney in Ceballos. I don't think that's so clear. I would say Ulrich, pre-Ceballos case, as well as Freytag, both pointing out. Definitely pre. Definitely pre. I have that in mind, Your Honor. So do I. However. For better or worse. For better or worse. For better or worse. The statement made that the First Amendment rights are not lost because the employee chose to speak internally, as plaintiffs here did, is the same as Freytag did not lose her right to speak as a citizen simply because she initiated the communications while at work. And again. I think we can stipulate that the scope of Ceballos changes the landscape. I think the issue before us today is whether it's clearly as a matter of law, in this case, clear enough to say that given the record that's before the district court and before us, therefore, there's no room for any kind of dispute. Because at this stage, we have to be able to say we accept the facts as they are alleged by plaintiffs. And if those facts wouldn't support a defeat of qualified immunity, then we can deal with it. But we're here on this interlocutory appeal, and I know there's some fuzziness because of some of our cases. But that is a major constraint here. I agree with that. But to tie that into the question that I perhaps hadn't gotten to answer from Judge Salmon, I think there may well not be any part of the claim that's lost because when they started to voice their complaints in the course of their jobs, the response from the defendant's supervisors was, you're out of line. That's none of your business. Get back to work. And that's when the authorities made one memo that's in the record. But in Sobolos, they basically transferred the assistant district attorney to a less desirable assignment, made the person go to an outlying district attorney's location, and that didn't seem to bother the Supreme Court. Now, there may be a claim for retaliation or perhaps whistleblower damages under state law. The question is whether or not you've still got a federal 1983 cause of action under Sobolos. Sobolos explicitly limited his claim to retaliation about the memo. And that was either a tactical or strategic choice that, with hindsight, well, when you read the Supreme Court's opinion, you say, well, maybe he would have chose otherwise. But he disavowed basing his retaliation claim on the heated meeting that he had with the Supreme Court. But I'm not sure I'm with you, Mr. Geller, in terms of, you know, at some point I think we have to give heed to the Sobolos observation that federal judges are not supposed to be sitting as sort of super employers looking over the shoulders of public managers,  And if an employee says, I'm not going to do the project work that you gave me, I don't think it's a violation of federal law for an employer to say get back to work or face the consequence. That's true. But when the employee then chooses to speak out as a citizen, as these employees did, and on this record that can't be disputed. You can make a fact argument, but this court doesn't take jurisdiction over that, and Carnell's the case, among others, that tells us that. They spoke out as employees. They used the same avenue, excuse me, they spoke out as citizens. That whistleblower complaint prior to their retaliation complaint was the same avenue that if I had those facts, I could have walked into the ombudsman and said, I'm complaining about these developers getting favors. I could have filled out that very same form. The difference in the forms is that form was subject to public disclosure. They went with their names. The employee form, you could be anonymous if you're concerned that maybe there will be some retaliation. But I'm not sure it's the remedy, is it? It's the characterization of the speech that is causing us the difficulty. We have to decide whether or not the speech is protected by the First Amendment. If it isn't, then under Sobolos, the employer can take action, and it may or may not constitute a violation of a different state statute, but it doesn't constitute a cognizable federal claim. Isn't that correct? That may be correct, but this speech was not pursuant to their jobs. They were not getting paid to file whistleblower complaints. And they can stand on their heads and say they're quality control and all that, and they're just flat out on the wrong side of that. They're not being paid to go in as citizens and fill out a citizen form whistleblower complaint. I think it comes down to whether it was part of their duties, and then if the form in which they voiced it was part of an internal mechanism that would fall within the ambit of what Justice Kennedy said, if that would be one result, and if it falls in the citizen complaint side, that would be a different result. But it does turn on understanding what their duties were and what their speech was arising out of that. Freitag teaches that that line, it can start as one and end up as the other. The prison guard was making complaints internally and then went external and got protection as a citizen. By the way, the issue was waived. In their brief, page 2803, for purposes of this appeal only, appellants assume that plaintiff's complaints qualify as protected speech. The rest of their appeal is so fact intensive that I think it was well for all of us that we had other things to talk about. The case should be sent back and affirmed.  You have a minute for rebuttal. Thank you, Your Honor. When the Sobolos case came out, we immediately notified the court. The court did allow a supplemental briefing. I don't think we would waive that. The second point I would make is, again, I don't think there's a lot of debate here that these were internal complaints. I think there is an issue that I think we've addressed pertaining to the ombudsman and a citizen complaint because under Freitag, it's who is it they're supposed to complain to, and that's the test that they use, and the ombudsman would be one of those. And finally, the comment about whether they're out of line or not, I would say no. If you look at the record at 472, Jennifer Linwall was specifically asking these people to provide the consultation. It's just they came out with reasonable traffic forecasting modelers disagreed, and that's what this case is all about. The reality is they do have a remedy. It's the statutory remedy here. They don't have to make a federal case out of it. Thank you. Thank you very much. The case argued is submitted, and we're appreciative of counsel's argument. Evolving area of the law. The best you can say. Yes. You couldn't have asked for it otherwise. No, no. So far, I haven't. All right. This court is adjourned.
judges: Fisher, Tallman, Ezra